**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DASHEKA WILSON** : | |
| : | **C.A. NO.:** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | **JURY TRIAL DEMANDED** |
| : | |
| **CIOCCA MUNCY HO INC.** : | |
| **d/b/a CIOCCA HONDA OF** : | |
| **WILLIAMSPORT** : | |
| : | |
| **Defendant** : | |

**CIVIL ACTION COMPLAINT**

**I.    PRELIMINARY STATEMENT**

Plaintiff, Dasheka Wilson ("Plaintiff"), through her undersigned counsel, files this Civil Action Complaint against her former employer, Defendant Ciocca Muncy HO Inc. d/b/a Ciocca Honda of Williamsport ("Defendant" or "Ciocca Honda"). Plaintiff was discriminated against and subjected to a hostile work environment based on her sex and race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"); 42 U.S.C. §1981 ("Section 1981"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all available damages, including economic loss, compensatory, and punitive damages, along with all other relief under applicable federal and state law as this Court deems appropriate.

**II.    PARTIES**

1.    Plaintiff Dasheka Wilson is an African-American woman and citizen of Pennsylvania, residing in Williamsport, 17701.

1

2. Defendant Ciocca Muncy HO Inc. d/b/a Ciocca Honda of Williamsport is a Pennsylvania corporation that maintains a principal place of business at 750 South West End Boulevard, Quakertown, Pennsylvania 18951.

3. At all relevant times, Plaintiff worked for Defendant out of its Honda dealership location at 201 Lycoming Mall Drive, Muncy, Pennsylvania 17756.

4. At all times material to this action, Defendant employed more than 15 employees.

5. At all times material to this action, Defendant was an employer within the meaning of the state and federal laws which form the basis of this action.

6. At all times material to this action, Plaintiff was an employee of Defendant within the meaning of the state and federal laws which form the basis of this action.

7. At all times material to this action, Defendant acted by and through its authorized agents, servants, contractors or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

### III. JURISDICTION AND VENUE

8. The causes of action set forth in this Complaint arise under Title VII, 42 U.S.C. § 2000e, *et seq*. (Count I); Section 1981, 42 U.S.C. §1981 (Count II); and the PHRA, 43 P.S. §951, *et seq*. (Count III).

9. The District Court has subject matter jurisdiction over Count I (Title VII) and Count II (Section 1981) pursuant to 28 U.S.C. §1331.

10. The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

11. Defendant is subject to the personal jurisdiction of this Court because, among other things, the case arises out of or relates to the contacts of Defendant with Pennsylvania, the contacts

of Defendant are continuous and systematic such that Defendant is at home in Pennsylvania, or Defendant has consented to personal jurisdiction by personal service within Pennsylvania via an authorized agent of the corporation.

12. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

13. On or about November 19, 2020, Plaintiff dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission complaining of the acts of discrimination and retaliation alleged herein.

14. On February 10, 2023, the EEOC issued a Notice of Right to Sue to Plaintiff.

15. Plaintiff has filed this action within 90 days of her receipt of this notice.

16. Plaintiff has complied with all administrative and jurisdictional prerequisites for the commencement of this action in this Court.

**IV.    FACTUAL ALLEGATIONS SUPPORTING CLAIMS**

17. Defendant is a Honda car dealership located in Muncy, Pennsylvania.

18. Defendant hired Plaintiff on January 6, 2020 as a Customer Service Representative.

19. Plaintiff worked for Defendant in this position until her constructive discharge on June 29, 2020.

20. Plaintiff was a dedicated employee of Defendant who performed her job duties competently.

21. As a Customer Service Representative, Plaintiff reported to Brian Lewis ("Lewis"), General Manager.

22. Plaintiff's job required her to work with Defendant's Sales and Service departments within the dealership.

23. At all relevant times, Christopher Schwartz ("Schwartz") served as Defendant's Service Manager and head of the Service Department. Schwartz is Caucasian/White.

24. At all relevant times, Douglas Hillyard ("Hillyard") served as Defendant's General Sales Manager and head of the Sales Department.

25. At all relevant times, Hillyard's sales team consisted of several Sales Managers, including, without limitation, Kory Eck ("Eck") and Dylan Onufrak ("Onufrak").

26. Plaintiff experienced systemic sexual harassment and chauvinism in Defendant's workplace.

27. Continuously and repeatedly throughout Plaintiff's employment, Defendant sexually harassed Plaintiff by subjecting her to various instances of uninvited and offense sexual conduct, sexist tropes, and sexual overtures.

28. For example, on Plaintiff's *first* day with Defendant, another Customer Service Representative named Crystal Braden ("Braden") gave Plaintiff an ominous warning of things to come. Braden told Plaintiff: "If you think you're going to move up quickly here, you're going to have to sleep with a lot of people." Plaintiff responded to Braden by stating she had no intention of sleeping with anyone employed by Defendant, and that she would instead prove by her hard work and positive attitude that she deserved a future with the dealership.

29. Within a mere month into Plaintiff's employment, true to Braden's warning, Defendant embarked on a campaign of sexual harassment and disparate treatment towards Plaintiff on the basis of her sex.

30. The sexual harassment began with offensive sexual comments. Starting in February 2020, Schwartz and other members of Defendant's management staff often remarked on Plaintiff's physical appearance in the workplace, including telling Plaintiff she was "hot and sexy"; asking

Plaintiff whether she was "single and looking"; and asking Plaintiff about her "favorite sexual position."

32. Schwartz also told Plaintiff that he intended to bring "new hires" to see her to show them "how hot" Plaintiff was.

32. Schwartz also told Plaintiff that his "groin makes up for his height."

33. Sexual comments such as those mentioned above continued throughout the rest of Plaintiff's employment with Defendant.

34. On one occasion in or around mid-February 2020, a sales manager named Hank (last name unknown) brought a customer into Plaintiff's office and told her that the customer requested, as a condition to buying one of Defendant's cars, that he get "a date" with Plaintiff. Plaintiff rejected the offensive offer and told Hank that his inappropriate actions in even entertaining this customer's request made her feel like a prostitute.

35. In or around April 2020, Eck (a Sales Manager) began to openly proposition Plaintiff for sex. He routinely asked Plaintiff to give him a "test drive," referring to intercourse. Plaintiff always rebuffed and opposed Eck's sexual advances, which were uninvited and unwelcome.

36. Onufrak—Eck's friend and fellow Sales Manager—also tried to persuade Plaintiff to have sex with Eck on multiple occasions. Plaintiff refused and repeatedly told Onufrak that she did not want to discuss the topic any further.

37. These sexual propositions culminated in a meeting between Plaintiff, Eck, Onufrak, and Kristin Heiser ("Heiser"), Defendant's Finance Manager, on or around May 20, 2020.

38. On that day, Eck, Onufrak, and Heiser summoned Plaintiff into Eck's office around lunch time, where the three were sitting at a roundtable. Once Plaintiff entered the office, rather

5

than discussing work-related topics, Heiser, Eck, and Onufrak began telling Plaintiff about their sexual exploits. Among other things, Heiser told Plaintiff that she liked "rough sex," "getting punched and choked during sex," "big dicks," and then asked Plaintiff about her sexual preferences. Eck and Onufrak chimed in by telling Plaintiff about their favorite sexual positions and asked Plaintiff to describe hers. Shocked and offended, Plaintiff told Heiser, Eck, and Onufrak to stop their inappropriate and highly-offensive sexual dialogue.

39. But they did not stop. Instead, Heiser ignored Plaintiff's protests and continued to proposition Plaintiff to have sex with Eck. Heiser even stated to Plaintiff—in front of Eck and Onufrak—that Eck was "really desperate" to have sex with her.

40. Plaintiff responded to Heiser by stating she would not have sex with Eck.

41. Heiser pressed further, telling Plaintiff that Eck "didn't care" that Plaintiff was a "single mother with three kids" and that "all he wants is a test drive."

42. Plaintiff felt humiliated and demoralized to be so obviously sexually harassed by three of Defendant's management level employees.

43. Later that day, Plaintiff called Carley Rinehart ("Rinehart"), Defendant's Human Resources Manager, to complain about the foregoing sexual harassment. Rinehart did not answer Plaintiff's call and did not call her back.

44. The next day, on or around May 21, 2020, Heiser approached Plaintiff again about Eck, repeating that Eck was "really desperate" to have sex with her. Plaintiff told Heiser to stop propositioning her on behalf of Eck.

45. Soon after, in or around late May to early June 2020, Schwartz and Hillyard summoned Plaintiff into an office and retaliated against her for attempting to report sexual

harassment to Rinehart. Schwartz accused Plaintiff of "lying" and screamed: "if you have any issues you don't go to human resources, you bring that shit to me!"

46. Thereafter, Schwartz retaliated against Plaintiff for attempting to report unlawful sexual harassment by belittling her in the workplace, calling her "stupid" and "loser" repeatedly and openly in front of other employees of the dealership.

47. Furthermore, in or around June 2020, Eck also began retaliating against Plaintiff for spurning his sexual advances by treating her with open hostility in the workplace.

48. On or about June 23, 2020, Schwartz let his hostility towards Plaintiff boil over into an act of blatant race discrimination. On that day, Schwartz introduced Plaintiff to a white customer of the dealership as "the big black girl." Plaintiff then told Schwartz, in front of the customer, not to call her that. On the verge of tears, Plaintiff then asked the customer: "do you see me as that?" The customer said no.

49. Before this incident, Schwartz had made other race-based comments to Plaintiff throughout her employment with Defendant, including that she had "big teeth," that her "teeth creep[ed] [him] out," and that if he "ever got caught in barbed wire," he would "call" Plaintiff to "cut [him] out." Schwartz also made disparaging comments about Plaintiff's hair, once saying it looked like "road-kill."

50. Plaintiff was so emotionally distressed by Schwartz's actions on June 23, 2020 that she felt compelled to take the next two days off from work (June 24 - 25, 2020) to mentally recuperate.

51. On June 25, 2020, while Plaintiff was out of work, Plaintiff called Rinehart again to report the discrimination and retaliation to which she had been subjected throughout her employment with Defendant. Rinehart did not answer Plaintiff's call.

52. Four days later, on June 29, 2020, Plaintiff called Rinehart and was finally able to connect with her. However, before Plaintiff could explain the reasons for her call, Rinehart abruptly informed Plaintiff that she could not speak with her. Rinehart then told Plaintiff that she should instead call Brian Lewis (Defendant's General Manager) to report her concerns.

53. Later that day, Plaintiff called Lewis and notified him that she was ending her employment with Defendant because of the ongoing discriminatory and retaliatory conduct to which she was subjected and which Defendant failed to appropriately address or remediate.

54. Defendant did not respond to Plaintiff's resignation notice or ask her to reconsider her resignation decision or otherwise make any attempt to retain her as an employee.

55. On June 29, 2020, Plaintiff was constructively discharged by Defendant.

56. Defendant failed to take appropriate remedial measures to address or prevent the discriminatory and retaliatory conduct towards Plaintiff, including the hostile work environment to which she was subjected, which caused Plaintiff to terminate her employment with Defendant.

57. As addressed above, Defendant unlawfully subjected Plaintiff to a hostile work environment that was rife with blatant and frequent acts of discrimination with respect to the terms of his employment. As a result, Plaintiff has been significantly damaged — economically, emotionally, and reputationally — and thus brings this action seeking redress from Defendant for the discriminatory and hostile work environment she had to endure for far too long.

58. Plaintiff's sex was a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of her, including, but not limited to, her constructive discharge and the hostile work environment to which Plaintiff was subjected, which caused Plaintiff to terminate her employment with Defendant.

59. Plaintiff's race was a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of her, including, but not limited to, her constructive discharge and the hostile work environment to which Plaintiff was subjected, which caused Plaintiff to terminate her employment with Defendant.

60. Plaintiff's opposition to discrimination and retaliation was a motivating and/or determinative factor in Defendant's retaliatory treatment of her, including, but not limited to, her constructive discharge and the hostile work environment to which Plaintiff was subjected, which caused Plaintiff to terminate her employment with Defendant.

61. The retaliatory actions taken against Plaintiff after she engaged in protected activity, including, but not limited to, the hostile work environment to which Plaintiff was subjected, would discourage a reasonable employee from complaining of discrimination at Defendant.

62. The discriminatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

63. As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

64. Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights, which warrants imposing punitive damages against Defendant.

## COUNT I – Title VII
**Sex Discrimination; Race Discrimination; Retaliation**
*Plaintiff v. Defendant*

65. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

66. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

67. Said violations were intentional and with malice and/or reckless indifference to Plaintiff's rights and warrant the imposition of punitive damages.

68. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

69. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless and until this Court grants the relief requested herein.

## COUNT II – 42 U.S.C. § 1981
**Race Discrimination; Retaliation**
*Plaintiff v. Defendant*

70. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

71. By committing the foregoing acts of race discrimination and retaliation against Plaintiff, Defendant has violated Section 1981.

72. Said violations were intentional and with malice and/or reckless indifference to Plaintiff's rights and warrant imposing punitive damages.

73. As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

74. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless and until this Court grants the relief requested herein.

## COUNT III – PHRA
### Sex Discrimination; Race Discrimination; Retaliation
*Plaintiff v. Defendant*

75. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

76. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PHRA.

77. As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

78. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless and until this Court grants the relief requested herein.

## RELIEF

**WHEREFORE**, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that this Court grant her the following relief by:

(a) declaring the acts and practices complained of herein to be in violation of the Title

11

VII;

  (b) declaring the acts and practices complained of herein to be in violation of Section 1981;

  (c) declaring the acts and practices complained of herein to be in violation of the PHRA;

  (d) enjoining and permanently restraining the violations alleged herein;

  (e) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

  (f) awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

  (g) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

  (h) awarding punitive damages to Plaintiff;

  (i) awarding Plaintiff any other damages that are appropriate under the Title VII, Sectio 1981, and the PHRA;

  (j) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

  (k) granting any other relief that this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

                                    **SIDNEY L. GOLD & ASSOC., P.C.**

                    By: /s/ Brian C. Farrell
                        Brian C. Farrell, Esquire
                        PA ID No.: 319145
                        1835 Market Street, Suite 515
                        Philadelphia, PA 19103
                        (215) 569-1999
                        bfarrell@discrimlaw.net
                        *Attorney for Plaintiff Dasheka Wilson*

Date: May 9, 2023