## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DASHEKA WILSON,

               Plaintiff,

    v.

CIOCCA MUNCY HO INC.
d/b/a CIOCCA HONDA OF
WILLIAMSPORT,

               Defendant.

No. 4:23-CV-00765

(Chief Judge Brann)

## MEMORANDUM OPINION

### OCTOBER 2, 2023

## I.   BACKGROUND

In June 2023, Dasheka Wilson filed a three-count complaint against Defendant, Ciocca Muncy Ho Inc. d/b/a Ciocca Honda of Williamsport ("Ciocca Honda"). Count I alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"). Count II asserts race discrimination and retaliation claims under 42 U.S.C. § 1981, and Count III contains discrimination and retaliation claims under the Pennsylvania Human Relations Act ("PHRA").

Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim seeking to dismiss the Amended Complaint or, alternatively, to strike Paragraphs 28 through 31; 34 through 48; and

50 through 54 (the "Challenged Paragraphs"). The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[1] and *Ashcroft v. Iqbal*,[2] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[4]

---

[1]   550 U.S. 544 (2007).
[2]   556 U.S. 662 (2009).
[3]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[4]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

A plaintiff in an employment discrimination case does not need to establish a prima facie case in his complaint. The Third Circuit clarified this point recently, stating: "a complaint need not establish a prima facie case in order to survive a motion to dismiss."[5]

## B.    Facts Alleged in the Amended Complaint

The facts alleged in the Amended Complaint, which I must accept as true for the purposes of this motion, are as follows. Wilson worked as a Customer Service Representative at Ciocca Honda from January 6, 2020 until her constructive discharge on June 29, 2020.[6] She experienced sexual and racial harassment over the course of her employment.[7]

### 1.    Incidents of Sexual Harassment Experienced by Wilson

Wilson began to encounter sexual harassment at the dealership in February 2020.[8] Christopher Schwartz, Ciocca Honda's Service Manager, and other management personnel often commented on her physical appearance.[9] Schwartz also told her that he planned to show "how hot [she was to] new hires" and that his "groin makes up for his height."[10]

---

[5]   *Id.* at 788.
[6]   Doc. 7 (Amended Compl.) at ¶¶ 18-19.
[7]   *Id.* ¶¶ 27, 48-49.
[8]   *Id.* ¶¶ 29, 33.
[9]   *Id.* ¶ 30.
[10]  *Id.* ¶¶ 31-32.

In mid-February 2020, a customer requested a date with Wilson as a condition to purchase a car.[11] She told the relevant sales manager that "even entertaining this customer's request made her feel like a prostitute."[12]

Beginning in April 2020, Kory Eck, a sales manager, openly began to proposition Wilson for sex.[13] Fellow sales manager Dylan Onufrak also repeatedly solicited her on Eck's behalf.[14]

Eck's unwanted advances "culminated in a meeting" with Eck, Onufrak, and Kristin Heiser, Ciocca Honda's Finance Manager, on May 20, 2020.[15] Eck, Onufrak, and Heiser talked about their "sexual exploits," and Heiser asked about her sexual preferences.[16] Later that day, Wilson called Carley Rinehart, Ciocca Honda's Human Resources Manager, to report this incident.[17] Rinehart did not answer or return this call.[18]

From late May to late June 2020, Schwartz and Douglas Hillyard, Ciocca Honda's General Sales Manager, retaliated against Wilson because she had attempted to report the ongoing sexual harassment.[19] Schwartz "accused [her] of 'lying' and screamed: 'if you have any issues you don't go to human resources, you

---

[11]   *Id.* ¶ 34.
[12]   *Id.*
[13]   *Id.* ¶ 35.
[14]   *Id.* ¶ 36.
[15]   *Id.* ¶ 37.
[16]   *Id.* ¶ 38.
[17]   *Id.* ¶ 43.
[18]   *Id.*
[19]   *Id.* ¶ 45.

bring that shit to me!'"[20] Following this incident, Schwartz continuously "belittle[ed]" her.[21] Beginning in June 2020, Eck "also began retaliating against [her] for spurning his sexual advances."[22]

### 2.    Incidents of Racial Harassment Experienced by Wilson

Schwartz also repeatedly racially harassed her.[23] For example, on June 23, 2020, Schwartz introduced her as "the big black girl" to a white customer.[24] Following this incident, Wilson took two days off "to mentally recuperate."[25]

### 3.    Events Leading to Wilson's Constructive Discharge

On June 25, 2020, Wilson attempted "to report the [ongoing] discrimination and retaliation" but was unsuccessful.[26] She called Rinehart again on June 29, 2020, but Rinehart "abruptly" directed her to instead contact Brian Lewis, the dealership's General Manager.[27] Wilson then called Lewis and ended her employment with Ciocca Honda due to the unaddressed, ongoing discrimination and retaliation.[28]

### 4.    Wilson's Charge of Discrimination

On November 19, 2020, Wilson cross-filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal

---

[20] *Id.*
[21] *Id.* ¶ 46.
[22] *Id.* ¶ 47.
[23] *Id.* ¶ 49.
[24] *Id.* ¶ 50.
[25] *Id.*
[26] *Id.* ¶ 51.
[27] *Id.* ¶¶ 51-52.
[28] *Id.* ¶ 53.

Employment Opportunity Commission ("EEOC").[29] She checked the boxes alleging discrimination based on race, sex, religion, and retaliation.[30] The earliest date of discrimination was listed as January 6, 2020 and the latest date as June 29, 2020, but the "continuing action" box was not checked.[31] Finally, she provided the following narrative:

> I was hired on or around January 6, 2020, as a Customer Service Advocate.
>
> Respondent would give my similarly situated Caucasian colleagues their commission checks but Respondent would not give me mine. Throughout my tenure, I have been subjected to harassment by Chris Swartz (Service Manager, Caucasian, Catholic). Swartz told me that I had huge teeth and if he got caught in barb wire, he would call me. In addition to racial harassment, Respondent subjected me to sexual harassment. Swartz would tell employees his 'groin makes up for his height.' Other members on the management team asked me about my favorite sexual position and if I would give Cory Eck a 'test drive' referring to a sexual act. In March 2020, Swartz informed me that I was going against God for not wanting more children. He informed me that we will be having meetings to educate me about Catholic views. I made complaints to Respondent but Respondent took no corrective action. On or before June 29, 2020, Respondent constructively discharged me. 2 weeks later, Respondent informed me that it will never consider me for reemployment at their facility.
>
> I allege that I have been discriminated and retaliated due to my sex (Female), religion (Christian), and my race (African American), in violation of Title VII of the Civil Rights Act of 1964, as amended. [32]

---

[29]   Doc. 7, Ex. 1 (Charge of Discrimination).
[30]   *Id.*
[31]   *Id.*
[32]   *Id.*

## C.    Analysis

Defendant contends that certain averments in the Amended Complaint exceed the scope of the original charge of discrimination and seeks to dismiss with prejudice the Amended Complaint or, alternatively, to strike the Challenged Paragraphs.

For the reasons described below, the Title VII and PHRA *quid pro quo* sexual harassment claims are dismissed, and Paragraphs 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, and 44 are untimely under the PHRA filing requirements. The incorporation of these untimely paragraphs into Count III is improper, and they are stricken from the Amended Complaint; leave to amend is provided.

### 1.    Count II – Wilson's 42 U.S.C. § 1981 Claim

The Court will first address Count II of the Amended Complaint, the race discrimination and retaliation claims under 42 U.S.C. § 1981. Ciocca Honda seeks to dismiss the Amended Complaint or, alternatively, to strike numerous paragraphs for failure to exhaust administrative remedies regarding these claims, but § 1981 claims do not require administrative exhaustion.[33] Therefore, Defendant's request to dismiss the entirety of Count II or, alternatively, to strike the incorporation of the Challenged Paragraphs into Count II is denied.

---

[33]    *See e.g.*, *Anderson v. Boeing Co.*, 694 F. App'x 84, 86 (3d Cir. 2017).

## 2.    Counts I and III – Wilson's Title VII and PHRA Claims

The Court next considers Defendant's request to dismiss Counts I and III or, alternatively, to strike the Challenged Paragraphs. Unlike § 1981, Title VII and the PHRA require the timely exhaustion of administrative remedies.

### a.    Timely Filing a Charge of Discrimination is Required

To bring a claim under Title VII and the PHRA, a plaintiff must timely file a charge of discrimination.[34] Plaintiffs have 180 days from the alleged act of discrimination to file a charge under the PHRA.[35] Title VII allows cross-filed complaints to be filed within 300 days of the alleged act of discrimination.[36]

Although unaddressed by either party, the Court will first evaluate Plaintiff's compliance with these filing requirements. Wilson dual-filed a charge of discrimination with the EEOC and PHRC on November 19, 2020.[37] Any incidents that occurred on or after January 24, 2020 were timely filed under Title VII. Under the 180-day PHRA filing requirement, any events that happened on or after May 23, 2020 were timely filed.

Paragraph 28 is facially untimely as to the Title VII claims, and Paragraphs 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, and 44 are facially

---

[34] *See Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)) and *Mandel*, 706 F.3d at 163 (citing *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 no. 6 (3d Cir. 2006)).

[35] *See e.g.*, *Vay v. Huston*, No. 14-769, 2016 U.S. Dist. LEXIS 174045, at *27 (W.D. Pa. Dec. 16, 2016).

[36] *Id.*

[37] Doc. 1 at ¶ 13.

untimely as to the PHRA claims. These paragraphs may be barred from consideration as to the PHRA claims.

Untimely allegations may be preserved through the application of equitable considerations. However, Wilson bears the burden of proving that these exceptions apply.[38] Because this issue remains unaddressed by the parties, the Court will strike the incorporation of these untimely allegations into Count III but provide leave to amend the complaint to develop this issue.

### b.    Requirement of Administrative Exhaustion

Under Title VII and the PHRA, plaintiffs must administratively exhaust their timely filed claims before filing suit.[39] The same exhaustion analysis applies to both PHRA and Title VII claims.[40]

### 1.    Parameters of the Subsequent Civil Suit

Subsequently filed Title VII and PHRA civil suits are "limited to claims that fall 'fairly within the scope of the prior complaint, or the investigation arising therefrom.'"[41] The Third Circuit directs courts to "closely examine the original charge's contents to determine the reasonable scope" of the administrative

---

[38]  *See Thomas v. Wheeler*, No. 05-CV-1447, 2006 U.S. Dist. LEXIS 103773, at *18 (E.D. Pa. Apr. 10, 2006) (citing *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)).

[39]  *See e.g.*, *Noel v. Boeing Co.*, No. 06-CV-2673, 2008 U.S. Dist. LEXIS 37514, at *54 (E.D. Pa. May 7, 2008).

[40]  *See Schouten v. CSX Transp., Inc.,* 58 F. Supp. 2d 614, 617 (E.D. Pa. 1999) (citing *Page v. EEC Mgmt. Servs.*, Civ. A. No. 97-2654, 1997 U.S. Dist. LEXIS 19547, at *3 (E.D. Pa. Dec. 8, 1997)).

[41]  *Tudor v. TBGHealth, Inc.*, No. 1:21-CV-00276, 2022 U.S. Dist. LEXIS 62653, at *5 (M.D. Pa. Apr. 4, 2022) (citing *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)).

investigation and to then "parse the later claim" to determine if it "would be covered in that reasonable investigation."[42] Courts should look for "factual similarities or connections."[43] However, this "factual overlap alone does not guarantee" exhaustion if "the new allegations do not fall within the 'gravamen' of the initial charge."[44] Whether the claims "advance the same theory of discrimination" is also relevant.[45]

Courts "liberal[ly]" construe the charge of discrimination when completing this exhaustion analysis.[46] Despite this, courts are "less sympathetic toward unexhausted allegations that arose" before the charge of discrimination was filed.[47]

Finally, just checking the box alleging a certain kind of discrimination is insufficient.[48] Some form of "supporting allegations" must also be included.[49]

### c. Exhaustion Analysis Regarding Wilson's Title VII and PHRA Claims

The Defendant seeks to dismiss Counts I and III of the Amended Complaint and alternatively requests to strike the Challenged Paragraphs. Due to Ciocca Honda's initial request to dismiss Counts I and III, the allegations of discrimination

---

[42]  *Id.* (citing *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997) and *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 966 (3d Cir. 1978)).

[43]  *Id.* (citing *Hicks,* 572 F.2d at 965).

[44]  *Id.* (citing *Antol*, 82 F.3d at 1296).

[45]  *Id.* (citing *Waiters v. Parsons*, 728 F.2d 233, 238 (3d Cir. 1984) (per curiam)).

[46]  *Mahan v. City of Phila.*, 296 F. Supp. 3d 712, 717 (E.D. Pa. 2017).

[47]  *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 435 (E.D. Pa. 2007).

[48]  *Morales v. PNC Bank, N.A.*, No. 10-1368, 2011 U.S. Dist. LEXIS 86918, at *36 (E.D. Pa. Aug. 4, 2011) (citing *McCutchen v. Suoco, Inc.*, No. Civ. A. 01-2788, 2002 U.S. Dist. LEXIS 15426, at *3 (E.D. Pa. Aug. 16, 2002)).

[49]  *Fisher v. Catholic Soc. Servs.*, No. 18-04653, 2019 U.S. Dist. LEXIS 13322, at *12 (E.D. Pa. Aug. 8, 2019).

must be evaluated using this exhaustion analysis. For the reasons explained below, the Title VII and PHRA sex discrimination, race discrimination, hostile work environment, and retaliation claims have been exhausted, but the *quid pro quo* sexual harassment claims have not been exhausted.

> **1.    Wilson's   Title   VII   and   PHRA   Sex Discrimination Claims are Within the Scope of Her Charge of Discrimination**

The cross-filed charge of discrimination raises the issue of sex discrimination several times. Wilson checked the box alleging sex discrimination, referenced specific incidents of sexual harassment in her narrative, and concluded that she had "been discriminated and retaliated [against] due to her sex."[50] These averments put the Defendant and the administrative agencies on notice regarding these allegations.[51] Ciocca Honda's request to entirely dismiss the Title VII and PHRA sex discrimination claims is therefore denied.

> **2.    Wilson's Title VII and PHRA Hostile Work Environment Claims are Within the Scope of Her Charge of Discrimination**

The administrative complaint suggests that Wilson faced a hostile work environment despite her failure to check the continuing action box.[52] It is "entirely possible" that she did not check this box because she completed this form after

---

[50]   Doc. 7, Ex. 1 (Charge of Discrimination).
[51]   *See e.g.*, *Martin v. Boeing Co.*, No. 20-5401, 2021 U.S. Dist. LEXIS 97583, at *8-10 (E.D. Pa. May 24, 2021).
[52]   Doc. 7, Ex. 1 (Charge of Discrimination).

quitting her job at the dealership.[53] This conclusion is supported by the fact that Wilson listed the entire course of her employment when asked when the discrimination took place.[54] Although the narrative description does not include language that is interchangeable with the phrase "hostile work environment," it does raise an inference of ongoing issues.[55] Finally, the charge noted that she had made complaints, but no corrective actions were ever taken.[56] By including these allegations, the hostile work environment claim "fairly [falls] within the scope of the prior complaint."[57] Therefore, the Defendant's motion to dismiss the hostile work environment claims is also denied.

### 3. Wilson's Title VII and PHRA *Quid Pro Quo* Sexual Harassment Claims are Dismissed as Outside the Scope of the Charge of Discrimination

Wilson's Title VII and PHRA claims regarding *quid pro quo* sexual harassment are dismissed, as she failed to exhaust any claim related to *quid pro quo* sexual harassment. *Quid pro quo* sexual harassment is defined by the EEOC and PHRC as "the submission to or rejection of [unwelcome sexual] conduct by an

---

[53] *Guess v. Phila. Hous. Auth.*, 354 F. Supp. 3d 596, 601 n.1 (E.D. Pa. 2019).

[54] Doc. 7, Ex. 1 (Charge of Discrimination).

[55] *See Anjelino v. New York Times Co.*, 200 F.3d 73, 93-94 (3d Cir. 1999).

[56] Doc. 7, Ex. 1 (Charge of Discrimination).

[57] *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). *See also Guess v. Phila. Hous. Auth.*, 354 F. Supp. 3d 596, 601 (E.D. Pa. 2019).

individual [that] is used as the basis for employment decisions affecting such individual."[58]

While the box alleging sex discrimination was checked on the original charge, simply checking a box on this form is insufficient to properly exhaust a claim.[59] Missing from the narrative description is any indication that unwelcome sexual conduct was "used as the basis for employment decisions" affecting Wilson.[60] In fact, besides the allegation that the dealership constructively discharged Wilson, the only other averment concerning an employment decision involves her commission checks being withheld for racially discriminatory reasons.[61] Nothing in the charge itself nor the investigation arising from it would have encompassed claims of *quid pro quo* sexual harassment.

### 4.   Wilson's Title VII and PHRA Race Discrimination Claims are Within the Scope of Her Charge of Discrimination

In her administrative filing, Wilson checked the box alleging race discrimination, raised incidents of race discrimination, and asserted that she had been "discriminated and retaliated [against] due to her race."[62] Like the sex

---

[58]   29 C.F.R. § 1604.11(a)(2) (1999). *See also* PA HUMAN RELATIONS COMMISSION, GUIDELINES ON SEXUAL HARASSMENT (1981).

[59]   *Morales v. PNC Bank, N.A.*, No. 10-1368, 2011 U.S. Dist. LEXIS 86918, at *36 (E.D. Pa. Aug. 4, 2011) (citing *McCutchen v. Suoco, Inc.*, No. Civ. A. 01-2788, 2002 U.S. Dist. LEXIS 15426, at *3 (E.D. Pa. Aug. 16, 2002)).

[60]   29 C.F.R. § 1604.11(a)(2) (1999).

[61]   Doc. 7, Ex. 1 (Charge of Discrimination).

[62]   *Id.*

discrimination claim, this sufficiently exhausted an allegation of race discrimination.[63] The Defendant's request to entirely dismiss these claims is therefore denied.[64]

### 5. Wilson's Title VII and PHRA Retaliation Claims Are Within the Scope of Her Charge of Discrimination

Wilson checked the box indicating a claim of retaliation, asserted that she was constructively discharged, and concluded that she was retaliated against due to her sex, race, and religion in the cross-filed charge of discrimination.[65] The narrative description also indicates that no corrective actions were taken in response to her complaints.[66] Although these assertions do not directly raise the issue of retaliation, they do raise an inference of possible retaliation. This inference places retaliation well within the scope of the administrative investigation.[67] Therefore, the request to dismiss Wilson's retaliation claims from Counts I and III is denied.

### d. Exhaustion Analysis Regarding the Challenged Paragraphs

Because only Wilson's *quid pro quo* sexual harassment claims can be entirely dismissed, the Defendant's request to strike the Challenged Paragraphs must be

---

[63] *See e.g.*, *Martin v. Boeing Co.*, No. 20-5401, 2021 U.S. Dist. LEXIS 97583, at *8-10 (E.D. Pa. May 24, 2021).

[64] *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996).

[65] Doc. 7, Ex. 1 (Charge of Discrimination)

[66] *Id.*

[67] *See e.g.*, *Martin v. Boeing Co.*, No. 20-5401, 2021 U.S. Dist. LEXIS 97583, at *8-10 (E.D. Pa. May 24, 2021).

evaluated. The discussion of Paragraphs 28 through 44 is only applicable to Count I because the allegations in these paragraphs are untimely as to the PHRA claims.

> **1.     Paragraphs 35, 36, 37, 38, 39, 40, 41, 42, and 44 are Within the Scope of Wilson's Charge of Discrimination**

As discussed above, Wilson checked the box alleging discrimination based on her sex.[68] Her narrative description also noted that "members on the management team" had sexually harassed her about Eck.[69] Paragraphs 35 through 42 and Paragraph 44 allege that Eck continuously propositioned her for sex and describe the May 20, 2020 meeting.[70] These events have significant factual overlap with the incidents described in the administrative complaint. These paragraphs are therefore "explanations of the original charge," and Ciocca Honda's request to strike Paragraphs 35, 36, 37, 38, 39, 40, 41, 42, and 44 is denied.[71]

> **2.     Paragraphs 29, 30, 31, and 34 are Within the Scope of Wilson's Charge of Discrimination**

Paragraphs 29, 30, 31, and 34 describe other incidents of sexual harassment.[72] Paragraphs 30 and 31 contain additional allegations against Schwartz, and Paragraphs 29 and 30 allege that other members of the management team also

---

[68]   Doc. 7, Ex. 1 (Charge of Discrimination).

[69]   *Id.*

[70]   Doc. 7 (Amended Compl.) at ¶¶ 35-42, 44.

[71]   *Sandom v. Travelers Mortg. Servs.*, 752 F. Supp. 1240, 1248 (D.N.J. 1990) (citing *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3d Cir. 1984)). As noted above, this affects only the incorporation of these paragraphs into Count I of the Amended Complaint because the incidents alleged in these paragraphs are untimely as to Wilson's PHRA claims.

[72]   Doc. 7 (Amended Compl.) at ¶¶ 29-31, 34.

sexually harassed her.[73] Paragraph 34 describes the incident where a sales manager suggested that Wilson go on a date with a customer in order to sell a car.[74]

These paragraphs have significant factual overlap with the sexual misconduct described in the original charge. Schwartz is identified as one of her harassers, and the additional allegations against him in Paragraphs 30 and 31 "merely buttress" this claim.[75] The other instances of sexual harassment in Paragraphs 29, 30, and 34 are within the scope of the likely investigation arising from the assertion that other members of the management team had sexually harassed her.[76] Therefore, the request to strike Paragraphs 29, 30, 31, and 34 is denied.[77]

### 3. Paragraphs 43, 51, and 52 are Within the Scope of Wilson's Charge of Discrimination

The administrative complaint indicated that Wilson had complained about the ongoing harassment, but no corrective actions were ever taken.[78] Paragraphs 43, 51, and 52 are an explanation of this statement as these paragraphs describe her attempts

---

[73] *Id.* ¶¶ 29-31.

[74] *Id.* ¶ 34.

[75] *Brooks v. CBS Radio*, No. 07-0519, 2007 U.S. Dist. LEXIS 92213, at *28 (E.D. Pa. Dec. 17, 2007) (citing *King v. M.R. Brown, Inc.*, 911 F. Supp. 161, 166 (E.D. Pa. 1995)).

[76] Doc. 7, Ex. 1 (Charge of Discrimination).

[77] As explained above, Paragraphs 29, 30, and 34 are untimely with respect to Wilson's PHRA claims.

[78] Doc. 7, Ex. 1 (Charge of Discrimination).

to report the ongoing harassment.[79] The Defendant's request to strike Paragraphs 43, 51, and 52 is therefore denied.[80]

### 4. Paragraphs 45, 46, and 47 are Within the Scope of Wilson's Charge of Discrimination

Paragraphs 45, 46, and 47 describe the retaliatory measures taken against her.[81] As noted above, Wilson checked the box for retaliation and alleged that she had been retaliated against due to her sex, race, and religion.[82] These paragraphs do not raise a new claim and have some factual overlap with the charge of discrimination.[83] This sufficiently exhausts these claims. As a result, Ciocca Honda's request to strike Paragraphs 45, 46, and 47 is denied.[84]

### 5. Paragraphs 48 and 50 are Within the Scope of Wilson's Charge of Discrimination

Another incident of race discrimination involving Schwartz is described in Paragraphs 48 and 50. The charge of discrimination mentions that Schwartz had racially harassed her and describes the racial incident contained in Paragraph 49.[85] Wilson also checked the box for discrimination on the basis of race.[86] Schwartz is

---

[79] *See Sandom v. Travelers Mortg. Servs.*, 752 F. Supp. 1240, 1248 (D.N.J. 1990) (citing *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3d Cir. 1984)); Doc. 7, Ex. 1 (Charge of Discrimination).

[80] Only Paragraph 43 is untimely as to Count III. Paragraphs 51 and 52 may be used in support of both Wilson's Title VII and PHRA claims.

[81] Doc. 7 (Amended Compl.) at ¶¶ 45-47.

[82] Doc. 7, Ex. 1 (Charge of Discrimination).

[83] *See e.g.*, *Martin v. Boeing Co.*, No. 20-5401, 2021 U.S. Dist. LEXIS 95783, at *9 (E.D. Pa. May 24, 2021); Doc. 7, Ex. 1 (Charge of Discrimination).

[84] These paragraphs contain allegations that are timely for both Title VII and PHRA purposes.

[85] Doc. 7, Ex. 1 (Charge of Discrimination).

[86] *Id.*

identified as an alleged harasser in both the charge of discrimination and these paragraphs.[87] This factual overlap places Paragraphs 48 and 50 within the scope of the administrative complaint. For this reason, the request to strike Paragraphs 48 and 50 is denied.[88]

### 6.    Paragraphs 53 and 54 are Within the Scope of Wilson's Charge of Discrimination

Paragraphs 53 and 54 and the administrative complaint both contain allegations that concern her constructive discharge from the dealership.[89] Including this information directly places these paragraphs within the scope of the original charge. The Defendant's request to strike Paragraphs 53 and 54 is therefore denied.[90]

### 7.    Paragraph 28 is Untimely

Finally, as noted above, Paragraph 28 is facially untimely as its allegation occurred outside the respective 180- and 300-day PHRA and Title VII filing periods.

## III.    CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(6) is granted in part. Plaintiff's *quid pro quo* sexual harassment claims in Count I and Count III are dismissed with prejudice. The averments in Paragraphs 28, 29, 30, 31, 32, 33, 34,

---

[87]  *Id.*
[88]  Paragraphs 48 and 50 may be used for both Count I and Count III of the Amended Complaint.
[89]  Doc. 7 (Amended Compl.) at ¶ 53; Doc. 7, Ex. 1 (Charge of Discrimination).
[90]  Paragraphs 53 and 54 may be used in support of Count I and Count III.

35, 36, 37, 38, 39, 40, 41, 42, 43, and 44 are untimely with respect to Count III. Paragraph 28 is also untimely as to Count I.

Plaintiff is granted leave to amend and will be given fourteen days from today's date to file an amended complaint.  If no amended complaint is filed, the Challenged Paragraphs will be stricken from Count III and any PHRA claims based solely on these averments will be dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge